# FOR PUBLICATION



FILED
Oct 21 2014, 6:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**J. MICHAEL SAUER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY A. GALLIEN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1402-PC-50 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
Cause No.22D01-1010-PC-18

**October 21, 2014**

**OPINION – FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Gary Gallien appeals the post-conviction court's denial of his petition for post-conviction relief. We reverse and remand.

## Issue

Gallien raises one issue, which we restate as whether he was denied the effective assistance of appellate counsel.

## Facts

The facts, as stated in Gallien's direct appeal, follow:

> Early in the morning on April 15, 2007, Gallien and two cohorts drove a stolen vehicle to a Goodwill store in Floyds Knobs, broke into the store, and stole money and a moving dolly. The trio then drove to a tavern in Galena, broke in, and stole an automated teller machine, a change machine, and additional money. Gallien fled when Floyd County Police Officer Gene Perrot arrived, but was quickly apprehended.

Gallien v. State, No. 22A01-0712-CR-565, slip op. at 2 (Ind. Ct. App. June 12, 2008). The State charged Gallien with two counts of Class C felony burglary, two counts of Class D felony theft, Class D felony receiving stolen property, and Class A misdemeanor resisting law enforcement. The State also alleged that he was an habitual offender. The State dismissed the resisting law enforcement charge, and a jury found Gallien guilty of the remaining charges. At the September 2007 sentencing hearing, Gallien's counsel argued that the burglaries were a single episode of criminal conduct under Indiana Code Section 35-50-1-2(c) and that the consecutive sentencing limitations applied. The trial court rejected that argument and sentenced Gallien to eight years on each of the burglary convictions to be served consecutively. The trial court also imposed a concurrent

2

sentence of three years on the receiving stolen property conviction and a twelve-year enhancement for Gallien's habitual offender status. The trial court did not impose a sentence on the theft convictions due to double jeopardy concerns.

In the 2008 direct appeal, Gallien's appellate counsel raised one issue, whether the sentence was inappropriate under Indiana Appellate Rule 7(B). We held that the sentence was not inappropriate, but we remanded for the trial court to amend the sentencing order to make the sentence consecutive to any sentence remaining in a case for which he was on probation. Gallien, No. 22A01-0712-CR-565, slip op. at 3-4.

Gallien filed a petition for post-conviction relief, which he later amended. Gallien argued that he was denied the effective assistance of appellate counsel because appellate counsel should have raised the consecutive sentencing limitation of Indiana Code Section 35-50-1-2(c) on direct appeal. At the hearing, Gallien's appellate counsel testified that if he "had to do it again," he "would want to raise" the consecutive sentencing issue on direct appeal. PCR Hrg. Tr. p. 8. After the hearing, the post-conviction court entered findings of fact and conclusions of law denying Gallien's petition. The post-conviction court concluded:

> 5. In the present case, the Goodwill and Sammy-O's burglaries are not closely connected in time, place and circumstances. A complete account of one charge can be described without referring to the details of the other charge.
>
> 6. The Goodwill and Sammy-O's burglaries were separated by approximately fourteen (14) to fifteen (15) minutes and two (2) to two and a half (2 1/2) miles. A complete account of the Goodwill burglary can be described without referring to the details of the

3

Sammy-O's burglary. Gallien broke in and entered Goodwill stealing Seventy-One Dollars ($71.00) and a hand cart. Gallien pried the door open at Goodwill to enter the store. Gallien rammed the stolen vehicle through the front entrance of Sammy-O's where he stole an ATM and cash. The only remote detail that would relate the two burglaries is that the handcart stolen from Goodwill was used in the Sammy-O's burglary to transport stolen items. The handcart being stolen at one place and used at the other does not make this an episode of criminal conduct.

7. Gallien had sufficient time between the two burglaries to stop and reflect on his actions. He could have stopped after the first burglary, but he chose to continue and burglarize Sammy-O's.

Appellant's App. pp. 62-63. The post-conviction court concluded that Gallien had not "established a reasonable probability that he would prevail under any of the single episode of criminal conduct articulated tests of the appellate courts." Id. at 64. The post-conviction court concluded that the outcome of the appeal would have been the same even if Gallien's appellate counsel had raised the consecutive sentencing issue. The post-conviction court noted that "[t]hese are separate and distinct acts to burglarize two (2) separate businesses with two (2) separate victims." Id. Therefore, it concluded that application of Indiana Code Section 35-50-2-1(c) was not appropriate. Gallien now appeals.

**Analysis**

Gallien argues that the post-conviction court's denial of his petition is clearly erroneous. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. Pruitt v. State, 903 N.E.2d 899,

4

905 (Ind. 2009) (citing Ind. Post-conviction Rule 1(6)).  "The findings must be supported by facts and the conclusions must be supported by the law." Id.  Our review on appeal is limited to these findings and conclusions.  Id.  Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment.  Id. (citing P-C.R. 1(5)).  "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" Id. (quoting Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001), cert. denied).  Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." Id.

On appeal, Gallien argues only that his appellate counsel was ineffective.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.  Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied.  A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  French v. State, 778 N.E.2d 816, 824 (Ind. 2002).  To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.

5

Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). Gallien argues that his appellate counsel failed to raise an issue on appeal, resulting in waiver. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Id. "To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." Id. (quoting Timberlake v. State, 753 N.E.2d 591, 605-06 (Ind. 2001), cert. denied). "If the analysis under this test demonstrates deficient performance, then we examine whether, 'the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial.'" Id. (quoting Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997), cert. denied). Further, we must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance. Id. at 1195-96. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. Id. at

6

1196. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Id.

## A. *Deficient Performance*

We first consider whether the consecutive sentencing issue was significant and obvious from the face of the record and whether it was clearly stronger than the issue raised on direct appeal. See id. at 1195. The statute at issue here is Indiana Code Section 35-50-1-2(c), which during the relevant time periods provided:

> except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

The phrase "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). Gallien was sentenced to sixteen years on the two burglary convictions, but the advisory sentence for a Class B felony, which was the next higher class of felony, was ten years. See Ind. Code § 35-50-2-5.

At the sentencing hearing, Gallien's counsel argued to the trial court that the consecutive sentencing statute was applicable and that his maximum consecutive sentence for the two burglaries was ten years, but the trial court rejected the argument. On direct appeal, Gallien's appellate counsel, who was also his trial counsel, did not raise the consecutive sentencing issue. In fact, our supreme court had addressed this statute

7

shortly before Gallien's direct appeal in both <u>Reed</u>, 856 N.E.2d at 1199-1200, and <u>Harris v. State</u>, 861 N.E.2d 1182 (Ind. 2007). Although Gallien's appellate counsel made the consecutive sentencing argument to the trial court and the issue had been recently addressed by our supreme court, he failed to raise the issue in Gallien's direct appeal. We conclude that the consecutive sentencing issue was significant and obvious.

The consecutive sentencing issue was also clearly stronger than the issue raised on appeal. Gallien's appellate counsel argued only that Gallien's sentence was inappropriate under Indiana Appellate Rule 7(B). Given the significant damage done to the Goodwill and the tavern and Gallien's extensive criminal history, there was little likelihood of success on that issue. At the post-conviction hearing, Gallien's appellate counsel testified that if he "had to do it again," he "would want to raise" the consecutive sentencing issue on direct appeal. PCR Hrg. Tr. p. 8. The consecutive sentencing issue is an extremely fact-sensitive analysis that would have been readily suitable for appeal. <u>See</u> <u>Slone v. State</u>, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014) ("Whether certain offenses constitute a 'single episode of criminal conduct' is a fact-intensive inquiry . . . ."). It is difficult to imagine a reasonable strategy for not raising the consecutive sentencing issue under these circumstances. We conclude that Gallien's appellate counsel's performance was deficient for failing to raise the consecutive sentencing issue on direct appeal.

### B. Prejudice

To succeed on a claim of ineffective assistance of counsel, Gallien must also demonstrate that he was prejudiced by his appellate counsel's deficient performance. Gallien argues that, if his appellate counsel had raised the issue, there is a reasonable

probability that the result of the appeal would have been different. The post-conviction court concluded that the two burglary convictions were not an episode of criminal conduct and, thus, the consecutive sentencing limitation of Indiana Code Section 35-50-1-2(c) did not apply. We reach a different result.

As we noted, our supreme court addressed this statute shortly before Gallien's direct appeal in both Reed, 856 N.E.2d at 1199-1200, and Harris, 861 N.E.2d at 1188-89. In Reed, our supreme court noted that, in determining whether offenses were an episode of criminal conduct, previous cases had analyzed whether a complete account of one charge could be related without referring to details of the other charge. Reed, 856 N.E.2d at 1199-1200 (discussing Tedlock v. State, 656 N.E.2d 273 (Ind. Ct. App. 1995)). The court held:

> [A]lthough the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). And as we have observed, "Tedlock emphasizes the timing of the offenses" and "refers to the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002) (citing Tedlock, 656 N.E.2d at 276).

Id. at 1200. Thus, we must consider whether the two burglaries were "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). Whether the offenses could be recounted without referring to each other may provide additional guidance, but it is not a dispositive factor.

9

We have considered the consecutive sentencing statute in the context of burglaries in two other cases.[1]  In Henson v. State, 881 N.E.2d 36 (Ind. Ct. App. 2008), trans. denied, two neighboring garages were burglarized on the same night.  We concluded that those burglaries were "closely related in time, place, and circumstance" and that the consecutive sentencing limitation was applicable.  Henson, 881 N.E.2d at 39.  On the other hand, in Slone, 11 N.E.3d at 973, we concluded that three burglaries did not arise from a single episode of criminal conduct.  There, the defendant broke into one building in December 2012, another in April 2013, and a third in May 2013.  Although there were some common elements of the burglaries, they were committed over the course of six months.

Here, the circumstances are closer to those in Henson than Slone.  At trial, the State proved that Gallien and two other men burglarized the Goodwill.  That burglary began at 4:35 a.m. and concluded at 5:14 a.m.  The burglary at Sammy O's tavern began a few minutes later at 5:28 a.m.  It was two to three miles between the Goodwill and Sammy O's.  Gallien and his cohorts used a cart stolen in the Goodwill burglary to load a change machine at Sammy O's, and they cut telephone wires at both locations.  Officer Perrot testified that, after receiving the Goodwill burglary report, he drove around the area and found the burglary in progress at Sammy O's.  He testified that there had been other burglaries in the area and that the "MO" was that the burglars "would hit one

---

[1] The post-conviction court also relied on Reynolds v. State, 657 N.E.2d 438 (Ind. Ct. App. 1995).  There, the defendant broke into three homes on the same day.  This court found that "Each burglary took place as a distinct episode in itself; each can be described without referring to details of the others."  Reynolds, 657 N.E.2d at 441.  However, Reynolds relied on the analysis advocated by Tedlock, which our supreme court has now discouraged.  See Reed, 856 N.E.2d at 1200.

business and while [the police] were investigating that crime they would break into another business." Tr. p. 200. During closing arguments, the State emphasized the similarities that tied the two crimes together. The State also emphasized that the timing of the two burglaries was "planned out" so that the police would be responding to one burglary while the men carried out another one. Id. at 395.

The post-conviction court placed much emphasis on whether the burglaries could be described without referring to each other. However, as Reed clarified, that analysis is not dispositive regarding whether the offenses are a single episode of criminal conduct. Our supreme court has also noted that "[t]here is no requirement that the victims be the same, and the acts of two crimes are almost always distinct at least in one element." Harris, 861 N.E.2d at 1188. Thus, the fact that two different businesses were burglarized is also not dispositive. Instead, we focus on the small distance between the two burglaries, the short amount of time between them, and the apparent scheme that tied them together. Based on that analysis, we conclude that the two burglaries were "closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). As a result, the consecutive sentencing limitation of Indiana Code Section 35-50-1-2 is applicable, and the maximum consecutive sentence possible for the two burglaries was ten years rather than the sixteen years imposed by the trial court. Gallien was prejudiced by his appellate counsel's failure to raise the issue.

## Conclusion

We conclude that the post-conviction court's denial of Gallien's petition for post-conviction relief was clearly erroneous. Gallien's appellate counsel was ineffective for

11

failing to raise an argument regarding the consecutive sentencing limitation of Indiana Code Section 35-50-1-2. We reverse and remand for resentencing.

Reversed and remanded.

BROWN, J., concurs.

BRADFORD, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

GARY A. GALLIEN,                    )
                                   )
    Appellant-Plaintiff,           )
                                   )
        vs.                    )     No. 22A01-1402-PC-50
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Defendant.            )

**BRADFORD, Judge, dissenting.**

Because I do not believe that the trial court's denial of Gallien's petition for post-conviction relief was clearly erroneous, I respectfully dissent.

It is well-settled that post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

## Whether the Post-Conviction Court Erred in Determining that Gallien Did Not Receive Ineffective Assistance of Trial Counsel

Gallien sought post-conviction relief claiming that he received ineffective assistance of his appellate counsel. The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether

14

counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in her performance and that the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Bieghler v. State*, 690 N.E.2d 188, 192-93 (Ind. 1997). To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.*
>
> Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Fisher v. State*, 810 N.E.2d 674, 677 (Ind. 2004); *Bieghler*, 690 N.E.2d at 193-95. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. [*Ben-Yisrayl v. State*, 738 N.E.2d 253, 261 (Ind. 2000)]. To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). If the analysis under this test demonstrates deficient performance, then we examine whether, "the issues which ... appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Bieghler*, 690 N.E.2d at 194 (citation omitted). Further, we must
>
>> consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance ... [and] should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in

15

> light of the facts of the case and the precedent available to
> counsel when that choice was made.

*Id*.  Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal.  *Id*. at 193.  One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.  *Id*.

*Reed v. State*, 856 N.E.2d 1189, 1195-96 (Ind. 2006).

Gallien claims that his appellate counsel was ineffective for failing to argue on direct appeal that his sentence should have been capped at ten years because his criminal acts constituted a single episode of criminal conduct.  Indiana Code section 35-50-1-2(c) provides that:

> except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 (before its repeal) to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

An episode of criminal conduct "means offenses or a connected series of offenses that are closely related in time, place, and circumstance.   Ind. Code § 35-50-1-2(b).  Whether a series of acts constitute a single episode of criminal conduct is a fact-intensive inquiry.  *See Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002).

It is of note that this court has issued a large number of seemingly inconsistent opinions regarding what constitutes a single episode of criminal conduct, some of which would tend to indicate that Gallien's actions might be found to constitute a single episode of criminal conduct on appeal.  As such, I must agree with the majority that the question

16

of whether Gallien's actions constituted a single episode of criminal conduct, which would limit his potential sentence to ten years rather than the sixteen imposed by the trial court, was significant and obvious from the face of the record. Further, in light of the damage caused by Gallien's actions and Gallien's criminal history, such an argument would arguably have been stronger, if not clearly stronger, that the appropriateness challenge raised by appellate counsel on direct appeal. However, even if appellate counsel's failure to raise this issue on direct appeal amounted to deficient performance, I do not believe that the post-conviction record demonstrates that Gallien established that he was prejudiced by the allegedly deficient performance.

In *Reynolds v. State*, 657 N.E.2d 438 (Ind. Ct. App. 1995), we concluded that the robbery of three homes on the same day did not constitute a single episode of criminal conduct. In *Reynolds*, the defendant and a companion broke and entered into one home, stole items, and left. *Id*. at 441. The duo then broke and entered another home on another street, stole property from that residence, and left. *Id*. The defendant and his companion then went to another home and were in the process of taking property therefrom when they encountered a deputy who ordered them to stop. *Id*. The trial court determined that each robbery constituted a separate episode of criminal conduct. *Id*. Upon appeal, we determined that it was within the trial court's discretion to do so. *Id*.

In the instant matter, Gallien and his companions broke into a Goodwill store in Floyds Knobs and stole money and a moving dolly. Gallien and his companions then drove over four miles to a tavern in Galena. After arriving at the tavern, Gallien and his companions broke into the tavern and stole an automated teller machine, a change

17

machine, and additional money. These facts, similar to the facts presented in *Reynolds*, depict two completely separate thefts. Notably, this is not a situation where Gallien and his companions broke into neighboring houses or businesses. Instead, this is a situation where Gallien and his companions committed one robbery, drove to another location over four miles away from the first location, and committed a second robbery. Based on these facts, I do not believe that there was a reasonable probability that a reviewing panel of this court would have accepted the argument that Gallien's actions constituted a single episode of criminal conduct. As such, I would conclude that Gallien failed to demonstrate prejudice, *i.e.*, a reasonable probability that but for counsel's errors the result of the proceeding would have been different. I would therefore conclude that the trial court's determination that Gallien failed to prove that he suffered ineffective assistance of appellate counsel was not clearly erroneous and would vote to affirm the judgment of the post-conviction court.